29 C.C.P.A. (Patents)

## CURTIS et al. v. LAND.

### Patent Appeals No. 4564.

Court of Customs and Patent Appeals.

June 15, 1942.

Rehearing Denied July 3, 1942.

Bartlett, Eyre, Keel & Weymouth, of New York City (Richard Eyre, of New York City, of counsel), for appellant.

Brown & Jones, of New York City (Donald L. Brown, of New York City, and Nathaniel R. French, of Cambridge, Mass., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention of the subject matter defined by the counts in issue (Nos. 1, 2, and 3) to appellee, Edwin H. Land.

The invention relates to electric signal devices, particularly railway traffic signal devices.

Count 3 is illustrative of the involved counts. It reads: "3. A signal device including a housing, a signal lamp within the housing, and means for suppressing phantom signals, said means being positioned to intercept light rays entering the housing and reflected from the vicinity of the lamp and comprising a composite sheet polarized to suppress substantially the passage of redirected light from within the housing."

The interference is between appellants' application No. 182,036, filed December 28, 1937, and appellee's application No. 178,696, filed December 8, 1937.

Appellants are the junior parties, and the burden was upon them to establish priority of invention by a preponderance of the evidence.

The gist of the involved invention is a means for suppressing phantom signals, and comprises, as stated in the quoted count, a "composite sheet polarized to suppress substantially the passage of redirected light from within the housing" of a prior art traffic signal lamp.

It appears from the record that when the prior art traffic signal lamps are exposed to the sun's rays or to other external sources of light, they frequently so reflect the light as to appear to be illuminated, thus indi-

cating to engineers and others that the signal lamp is operating, when, as a matter of fact, it is not. This reflected light is referred to in the record as "phantom" or "false" signals. The obvious dangers of such signals need be no part of our discussion here.

Appellants are engineers in the employ of their assignee, the Tung-Sol Lamp Works, Inc., Newark, New Jersey, a manufacturer of incandescent light bulbs, including such as are used in railway signal lamps.

Appellee is the president of his assignee, the Polaroid Corporation, Boston, Massachusetts.

It is contended here by counsel for appellants, as it was before the tribunals of the Patent Office, that appellants conceived the involved invention sometime in the spring or early summer of 1937, and disclosed it to appellee in a letter dated August 2, 1937, signed by Mr. Braunsdorff (one of the appellants), and addressed to the Polaroid Corporation, attention Mr. Richard/T. Kriebel, advertising manager for the Polaroid Corporation.

Certain correspondence between Mr. Braunsdorff, the Land-Wheelwright Laboratories, Inc., of Boston, Massachusetts (a predecessor of the Polaroid Corporation), and Richard T. Kriebel, on behalf of the Polaroid Corporation of Boston, was made a part of the record. Among such correspondence was a letter, dated June 11, 1937, wherein Mr. Braunsdorff stated that he would like to obtain "a piece of Polaroid approximately five inches in diameter," and that he expected to use the "Polaroid disc in a lighting unit to eliminate certain redirected light." On June 23, 1937, a letter of acknowledgement was written to Mr. Braunsdorff, wherein it was stated that the witness Kriebel was out of the city and that when he returned he would reply to Mr. Braunsdorff's letter. On July 23, the witness Kriebel, on behalf of the Polaroid Corporation, wrote Mr. Braunsdorff quoting prices for polaroid, which polaroid, according to the testimony of the witness Kriebel, was the Polaroid Company's "ordinary *plane* polarizing sheet" and its "standard product at that time." (Italics ours.) In that letter, the witness Kriebel offered Mr. Braunsdorff the use of the Polaroid Company's laboratory and the aid of the company's experts in solving the problem to which Mr. Braunsdorff had referred. On August 2,

1937, Mr. Braunsdorff wrote the Polaroid Corporation, attention Mr. Kriebel, as follows:

"Thank you for your letter of July 23rd in which *you offer the services of your laboratory for our problem.* I believe it best to outline this situation in the hope you may be of some assistance. One of the large railroads is using a special color signal system with which they are having some difficulty from what is commonly known as 'phantom images'. This is caused by interference from sunlight at certain times of day with light rays entering the signal which gives the appearance of signal being lighted normally. *It is my thought that the use of a Polaroid screen will prevent some of this redirected light from illuminating the color filter.* The inside of this signal contains a parabolic reflector and rounded bulb, both of which surfaces tend to redirect light coming in. Since this condition is very critical for position of observation, *I believe it has possibility of control by using Polaroid.* The lens opening of this signal is approximately 4½ inches in diameter and *I had hoped to obtain a sample sheet of Polaroid* (approximately 5 inches square which could be trimmed to size) which could be fitted into this opening between lens and color filter.

"*If this idea is unsound or if you have already tried it in practice,* please advise. As a lamp manufacturer, we have received this request to improve general lighting conditions. *If the use of Polaroid offers any improvement in the correction of this phantom image,* I can assure you the field of application would be very large.

"Please treat this request as confidential." (Italics ours.)

*On August 9, 1937,* the witness Kriebel replied to that letter, expressing appreciation for Mr. Braunsdorff's statement of *the problem* confronting appellants regarding railway signal devices and stating that he had requested the Polaroid Corporation's technicians to submit a report which he hoped he would have in a week or ten days. On September 14, 1937, Braunsdorff again wrote to the witness Kriebel, stating that if the report of the technical division of the Polaroid Corporation had been made he would be glad to receive it. *On September 28, 1937,* the witness Kriebel wrote Mr. Braunsdorff, stating that he had received a report from the Polaroid Corporation's technical division and that it appeared therefrom that—

"By the use of a form of Polaroid somewhat different from our regular grade it seems practically certain that the 'phantom images' can be reduced to a considerable degree, perhaps completely.

"Because the signal light may be somewhat different from our test set-up, in position of reflector, lamp, and lens, we should like to run a test on the actual lamp before making final recommendations. We should, therefore, like to suggest that you send us one of the lamps which we can test, equip, and return to you for your comments." (Italics ours.)

It clearly appears from the record that an ordinary *plane* polarizing sheet (the Polaroid Corporation's standard product during the summer and fall of 1937) would not operate successfully to suppress phantom or false signals, and that the problem was solved by using a composite sheet of material, described in appellants' involved application as comprising a "plane polarizing element and a cooperating double refractory or quarter-wave element bonded together with the plane polarizing element on the side away from the lamp bulb so that light from an external source, after being first plane polarized, becomes circularly polarized by the quarter wave or double refractory element." (Substantially the same description of the circular polarizing element is contained in appellee's involved application and in the testimony of appellee's witnesses.) It further appears from the record that the first suggestion of the use of a circular polarizing material was made by appellee to the witness Kriebel on September 27, 1937, the day before the witness Kriebel wrote the hereinbefore quoted letter, dated September 28, 1937, to Mr. Braunsdorff, in which he requested that Mr. Braunsdorff forward a signal lamp which could be tested. The signal lamp, according to the record, was delivered by Mr. Braunsdorff to the Polaroid Corporation, and successful tests were made with the circular polarizing material by appellee's witness Martin Grabau, manager of the technical division of the sales department of the Polaroid Corporation, sometime between November 10 and 19, 1937, the latter date being the approximate date when the witness Kriebel personally returned the borrowed signal lamp to Mr. Braunsdorff at the plant of the Tung-Sol Lamp Works, Inc., and when he also delivered to Mr. Braunsdorff a sheet of circular polarizing material which was there-after placed in the signal lamp and tested by appellants.

It is contended here by counsel for appellants that appellants are the original inventors of the subject matter defined by the counts in issue; that they disclosed the invention to appellee prior to any knowledge thereof by him; that such disclosure was made in their letter to Mr. Kriebel, hereinbefore quoted, dated August 2, 1937; that the reference in that letter to "Polaroid screen," a sheet of "Polaroid," and "Polaroid," identified the circular polarizing material which was suggested by appellee and successfully used by the witness Grabau; that as appellants had disclosed the involved invention to appellee, they were entitled to the benefits of appellee's reduction of the involved invention to practice; and that, although it may have been necessary for appellee to select a "suitable polarizing material" to solve the problem, nevertheless, such selection, in view of appellants' disclosure in their letter of August 2, 1937, involved nothing more than the ordinary skill of a "worker in the art of light polarization." Counsel for appellants further argue in their brief that the relationship existing between the parties was such that all activities of appellee enured to the benefit of appellants, including the suggestion of the use of circular polarizing material and appellee's reduction to practice in November 1937; that the "circumstances are such that any suggestion, *whether inventive or not,* which appellants might have made must enure wholly to the benefit of appellants" (italics ours); that the correspondence between the parties amounted to a binding written agreement on the part of appellee that any suggestions or tests that he made were to enure to the benefit of appellants; and that there is "no essential difference between an ordinary employer and employee case and a case, such as the instant one, wherein one party agrees to perfect the ideas of the other, except that in degree there is the difference that there is a higher trust relationship established between a manufacturer who agrees to perfect an idea submitted to him for the benefit of the party submitting the idea, than there is between the ordinary employee and employer."

It is argued by counsel for appellee, and it was held by each of the tribunals of the Patent Office, that the disclosure in appellants' letter of August 2, 1937, of "Polaroid screen," a sheet of "Polaroid," and

"Polaroid," was not a disclosure of circular polarizing material, the use of which both parties state in their applications solved the problem of suppressing phantom or false signals; that appellants did not disclose to appellee the involved invention; and that appellants' disclosure was not of such character that it would enable one skilled in the art of light polarization to solve the problem of suppressing phantom or false signals without the exercise of the inventive faculties.

It appears from the testimony of the witness Kriebel that during the summer of 1937 neither the Polaroid Corporation nor its predecessors ("Land-Wheelwright Laboratories or Sheet Polarizer Company") were selling or offering for sale *circular polarizing material;* that ordinary *plane polarizing material* was the only polarizing material then being sold or offered for sale by the Polaroid Corporation or its predecessors; that it was sold under the trade-mark "Polaroid"; that such *plane polarizing material* could not be used successfully to suppress phantom or false signals; and that in order to solve the problem confronting the parties it was necessary to use *circular polarizing material,* which, as hereinbefore stated, means *plane polarizing material combined with a double-refractory or quarter-wave element.* Furthermore, it appears from appellants' specification that the plane polarizing material or sheet is "procurable on the market under the commercial name 'polaroid'"; and that the quarter-wave or double-refractory element "may be a Fresnel rhomb or any suitable double refracting material which gives a quarter wave retardation to one component of the beam with respect to the other component."

It would seem to be evident from what has been said that the disclosure in appellants' letter of August 2, 1937, of "Polaroid" is not a disclosure of the polarizing material which the parties agree solved the problem of suppressing phantom or false signals in railway signaling devices. Furthermore, we think it is clear from the record that appellants had no conception on August 2, 1937, of the kind of polarizing material necessary to solve the problem. Nor are we able to say, on the record presented, that upon the suggestion of the use of "Polaroid," it would be obvious to one skilled in the art that circular polarizing material, such as is defined in both appellants' and appellee's applica-

tions, would suppress phantom and false signals.

We hold, therefore, that appellee is an original inventor of the subject matter defined by the involved counts, and that appellants are not entitled to the benefit of the work performed and the success achieved by appellee. See King v. Burner, 90 F.2d 343, 24 C.C.P.A., Patents, 1312; Raiche v. Foley, 113 F.2d 497, 27 C.C.P.A., Patents, 1380.

It clearly appears from the record that appellee conceived the invention on September 27, 1937; that he reduced it to practice at least as early as November 19 of that year; and that it was not until after appellee's reduction to practice that appellants had a conception of the invention. That being so, it is unnecessary that we consider other arguments presented here by counsel for appellants.

We are in agreement with the conclusion reached by the tribunals of the Patent Office.

The decision of the Board of Appeals is affirmed.

Affirmed.